FILED & ENTERED

DEC 23 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>William J Beverly,<br><br>Debtor(s), | Case No.: 2:04-bk-29840-TD<br><br>Adversary No.: 2:05-ap-01649-TD<br><br>Chapter: 7<br><br>MEMORANDUM DECISION |
| Edward M Wolkowitz,<br><br>Plaintiff(s),<br><br>vs.<br><br>William J Beverly, Stephanie Beverly,<br><br>Defendant(s). | |

The Bankruptcy Appellate Panel (BAP) in its decision in In re Beverly, 374 B.R. 221 (9th Cir. BAP 2007), ruled that William Beverly's Marital Settlement Agreement (MSA) "was an actually fraudulent transfer under [California's] UFTA not subject [in Stephanie Beverly's case] to the good-faith transferee-for-reasonably-equivalent-value defense and may be avoided." Id. at 240 (citing Calif. Civ. Code § 3439.04(a)(1) and Bankruptcy Code § 544(b)).

The BAP also ruled that "the evidence provided by the trustee and the Outlands compels the conclusion that [William] Beverly actually intended to hinder or delay, if not

- 1

defraud, the Outlands in their effort to collect upon the judgment he expected to be rendered in the Outland litigation in state court." Id. 374 B.R. at 246.

The BAP, after announcing its conclusions, including denying William Beverly a discharge under § 727(a)(2)(A), reversed my judgment in the fraudulent transfer actions in favor of William and Stephanie Beverly and remanded "with instructions to enter judgment in favor of plaintiffs, avoiding the transfer of debtor's [i.e., William Beverly's] interest in $1 million of nonexempt property," based on the conclusion that William Beverly "actually intended to hinder or delay creditors when he transferred his interest in $1 million of nonexempt property through the MSA." Id.

The BAP ruling has been affirmed by the Ninth Circuit. In re Beverly, 551 F.3d 1092 (9th Cir. 2008). The matter has been remanded to me with instructions to enter an appropriate judgment.

What was William Beverly's interest in "$1 million of nonexempt property?" The Supreme Court in Begier v. Internal Revenue Service, 496 U.S. 53 (1990) said that "an interest of the debtor in property" is anything that would have been part of his estate had he not transferred it before his bankruptcy. Specifically, the Court said:

> Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. See, e.g., 11 U.S.C. § 726(b) (1982 ed.); H.R.Rep. No. 95-585, supra, at 177-178. Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy. Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated. The reach of § 547(b)'s avoidance power is therefore limited to transfers of "property of the debtor."
> 
> The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors—"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition analog to § 547(b)'s "property of the debtor." FN3.

- 2 -

> Section 541(a)(1) provides that the "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(d) provides:
>> "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."
>
> FN3.  To the extent the 1984 amendments to § 547(b) are relevant, they confirm our view that § 541 guides our analysis of what property is "property of the debtor" for purposes of § 547(b). Among the changes was the substitution of "an interest of the debtor in property" for "property of the debtor." 11 U.S.C. § 547(b) (1988 ed.). Section 547(b) thus now mirrors § 541's definition of "property of the estate" as certain "interests of the debtor in property." 11 U.S.C. § 541(a)(1) (1988 ed.). The Senate Report introducing a predecessor to the bill that amended § 547(b) described the new language as a "clarifying change." S.Rep. No. 98-65, p. 81 (1983). We therefore read both the older language ("property of the debtor") and the current language ("an interest of the debtor in property") as coextensive with "interests of the debtor in property" as that term is used in 11 U.S.C. § 541(a)(1) (1988 ed.).

Id. at 58-59.

The BAP acknowledged the Supreme Court's Begier decision in In re Bakersfield Westar, Inc., 226 B.R. 227 (9th Cir. BAP 1998), where it held that a shareholder's prepetition revocation of a subchapter S corporation election was avoidable under §§ 548(a)(1) and 550 and was enforceable against the Internal Revenue Service in order to prevent sole shareholders of the corporation from employing the revocation of their subchapter S taxpayer status to fraudulently shift their tax liabilities to their corporation as a bankruptcy planning strategy.  Id. at 233-39.

In this case, what William Beverly transferred prepetition to Stephanie Beverly was over $1 million in community property interests in four accounts in return for Stephanie Beverly's community property interest in William Beverly's pension worth over $1 million and William Beverly's assumption of sole responsibility for the Outland debt which was a community property responsibility of William and Stephanie Beverly.

Employing the language and spirit of Begier and Weststar, it would seem that in order to comply with the BAP mandate, the entire prepetition community property interest of William and Stephanie Beverly in the $1 million must be treated here as part of William Beverly's

estate. Stephanie Beverly's authorities cited in opposition to Begier and Weststar, do not overcome the strength and clarity of the Begier decision and the BAP's Weststar decision, nor that of the Mejia decision of the California Supreme Court, as discussed by the BAP. I believe I am bound by Begier, Weststar and Mejia, notwithstanding Stephanie Beverly's assertion of California statutory and case law that might lead to a different result but for the fraud findings here.

The Trustee previously recovered $444,077.55 from Stephanie Beverly from her surrender in early 2009 of accounts she pledged to the Trustee in return for a stay of execution pending her appeal of the BAP decision. In the judgment the Trustee now seeks, he therefore is entitled to recover from Stephanie Beverly under § 550 the difference between the community property interest transferred to her in 2004 and the $444,077.55 the Trustee recently recovered from her. The Trustee's statement appears to be correct, that the total amount transferred on April 9, 2004 was $1,051,577. Trustee's Brief, Aug. 11, 2009, 4:20-5:13. The transfer was made, at least in part, to insulate nonexempt community property of the Beverlys from community creditors by transmuting the property into Stephanie Beverly's separate property through the MSA and divorce.

The Trustee also seeks an award of prejudgment interest. The Ninth Circuit has determined that state law is applicable when determining prejudgment interest in fraudulent transfer actions under § 544. In re Agric. Research & Tech. Group, Inc. (In re Agritech), 916 F.2d 528, 541 (9th Cir. 1990). The Ninth Circuit also has approved calculating prejudgment interest on recovered fraudulent transfers from the date of transfer. Donell v. Kowell, 533 F.3d 762, 772 (9th Cir. 2008); see also, Bass v. Youngblood, 221 Cal. App. 2d 278, 289 (1963). The transfer date here was April 9, 2004, as noted previously.

California Civil Code § 3287(a) allows interest from the day the right to recovery "vests," that is, when the amount is "certain" or "capable of being made certain by calculation." Here, there appears to be no question about the amount of the transfers in issue. The amount can be made certain by reference to the MSA, accompanying discreet documentary evidence, and calculation, and no such amount was the subject of dispute by the Beverlys, or either of them, so far as the record shows. William and Stephanie Beverly knew the amount of the transfer

involved. The transfer was detailed in the MSA that William and Stephanie Beverly signed on April 9, 2004. There appears to be no dispute as to the documentary evidence relating to the four accounts.

The test for whether prejudgment interest is recoverable under Cal. Civ. Code § 3287(a) is "(1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute the damages." Chesapeake Ind., Inc. v. Togova Enter., Inc., 149 Cal. App. 3d 901, 911 (1983). Further, the "vesting" requirement of § 3287(a) is satisfied when the amount of damages is certain, not when liability is determined. Evanston Ins. Co. v. OEA, Inc., 566 F.3d 915, 921 (9th Cir. 2009). The Trustee's evidence satisfies the requirements of each of the foregoing tests.

The California Constitution provides that "in the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum." Cal. Const., Art. XV § 1. This provision applies to pre- and post-judgment interest alike. Lund v. Albrecht, 936 F.2d 459, 465 (9th Cir. 1991). Since there is no California legislative act specifying the rate of prejudgment interest for a fraud claim, the constitutional rate of 7 percent applies. Michelson v. Hamada, 29 Cal. App. 4th 1566, 1586 (1994) (citing Continental Airlines, Inc. v. McDonnell Douglas Corp., 216 Cal. App. 3d 388, 434 (1989)); Family Tree Farms, LLC v. Alfa Quality Produce, Inc., 2009 WL 565568 (E.D. Cal. 2009).

In a fraudulent transfer action dealing with California law, the Ninth Circuit affirmed the award of a 7 percent prejudgment interest rate. In re Slatkin, 243 Fed. Appx. 255 (9th Cir. 2007). In re Slatkin involved a Ponzi scheme where the bankruptcy trustee successfully avoided fraudulent transfers to investors under § 544(b)(1) and Cal. Civ. Code § 3439.04(a). Id. Without stating its reasoning, the Ninth Circuit concluded that "the bankruptcy court reasonably awarded pre-judgment interest at the California rate of 7%." Id. at 260.

The parties here disagree over whether prejudgment interest should be calculated on a simple or compound basis. The Trustee's argument for an allowance of compound prejudgment interest in this case begins with Cal. Civ. Code § 3288 which allows interest in fraud cases to be awarded in the discretion of the jury. Bullis v. Security Pac. Nat'l Bank, 21

- 5 -

Cal. 3d 801, 815 (1978) establishes that after a court trial without a jury, § 3288 permits a judge to exercise the discretion accorded to a jury by the statute. The trial here was conducted without a jury; thus, it is arguable that § 3288 applies in this fraud case.

In <u>California v. Day</u>, 76 Cal. App. 2d 536, 553-56 (1946), the court concluded in a fraud case that compound interest was not allowable. The court discussed at some length the California constitutional policy regarding interest and concluded that § 3288 "does not include the right to make an order for interest upon interest because that would constitute a penalty over and above that expressly allowed in cases of oppression, fraud or malice[,]" citing Cal. Civ. Code § 3294. <u>Id.</u> at 555. At the same time, the court also pointed out that "the general rule is that interest may not be computed on accrued interest unless by special statutory provision, or by stipulation of the parties, and in the latter event may not be fixed in conflict with statutory provisions." <u>Id.</u> at 554.

In <u>Michelson v. Hamada</u>, 29 Cal. App. 4th 1566 (1995), the court vacated a punitive damage award for fraud that allowed compound interest, remanding the matter "for recalculation of prejudgment interest based on the legal rate of seven percent and a redetermination of the amount of interest based upon the actual dates of loss as can best be determined." <u>Id.</u> at 1596.

It is my conclusion that the simple interest approach should govern. First, because that is consistent with both the California Constitution and case law. Second, and although the Trustee's claims were grounded in the fraudulent transfer laws, in my judgment the litigation before me has been conducted by the defendants in a straightforward manner. Seven percent simple interest seems to adequately compensate the estate for the time value of the money at issue. Finally, I find no California authority that requires the imposition of compound prejudgment interest in a judgment based upon fraud. I do not believe that compounding of prejudgment interest is called for by the evidence or the authorities cited by the Trustee. Although there is some California case law that seems to sanction compounding prejudgment interest, I have been referred to no case law that does so clearly or unequivocally as applicable to the fraudulent transfer action under consideration here. The general principle

enunciated in California v. Day, supra, would appear to support an award of prejudgment interest limited to simple interest here, and I so conclude.

The Trustee also seeks an award of attorneys' fees as further damages. In support, the Trustee has argued at length that the equity jurisdiction of a federal court has been cited by the Supreme Court as a proper basis to award attorneys' fees under extraordinary circumstances, to spread the cost of benefits gained by creditors of a common fund created as a result of a lawyer's litigation efforts, regardless of certification of a class, or where an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. I have considered the extensive case law cited by the Trustee, including that from the United States Supreme Court and the Ninth Circuit Court of Appeals.

There were no wasteful litigation tactics here. The fraudulent transfer occurred pre-bankruptcy as a result of William Beverly's misjudgment about California and federal exemption law in his divorce and bankruptcy planning. The litigation was conducted in a straightforward manner by all parties. Moreover, as I see the evidence, the Trustee's actions were legal actions, prosecuted under California statutory law and the Bankruptcy Code. The Trustee has cited no California statute or unambiguous controlling decisional law requiring an award of attorneys' fees in an action such as this one in the absence of statute or agreement of the parties allowing for such an award.

It also is clear that Congress knows how to authorize by statute the court's award of attorneys' fees. It has done so, for example, in §§ 303(i), 328, 330, 331, and 362(k) of the Bankruptcy Code. In the actions brought by the Trustee, under §§ 727, 523, 544, 548, and 550, no attorneys' fee provision authorizes such an award. Under the circumstances, I do not believe the Trustee has demonstrated that attorneys' fees are allowable here. Rather, I conclude that the American Rule should apply, that parties must bear their own attorney's fees "unless Congress provides otherwise." See, e.g., Sternberg v. Johnston, 582 F.3d 1114, 1121-22 (9th Cir. 2009). Thus, I decline to award attorneys' fees as an additional element of the Trustee's damages.

At the same time, I note that the Trustee's attorneys in this matter applied for and their employment was approved by court order; they are entitled to be compensated upon proper

notice and application for the reasonable value of their services to the estate. Thereby, the Trustee's attorneys' fee administrative cost is distributed equitably among the general unsecured creditors of the bankruptcy estate.

The Trustee is directed to serve and submit a proposed judgment based on the foregoing, along with a memorandum supporting the Trustee's updated calculation of the current outstanding balance of his damages and prejudgment interest.

IT IS SO ORDERED.

DATED: December 23, 2009

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:
1) Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) MEMORANDUM OF DECISION was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of 12/2/09, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Sidney Lanier on behalf of Plaintiff Edward Wolkowitz
st_denys@hotmail.com

Dennis E Mcgoldrick on behalf of Defendant William Beverly
dmcgoldricklaw@yahoo.com

David M Reeder on behalf of Defendant Stephanie Beverly
david@reederlaw.com

Joshua D Wayser on behalf of Defendant Stephanie Beverly
joshua.wayser@kattenlaw.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Defendant**
Stephanie Beverly
13430 Isis Avenue
Hawthorne, CA 90250

**Plaintiff**
Edward M Wolkowitz
23110 Crenshaw Blvd Ste A
Torrance, CA 90505-3025

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of

service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

**ADDITIONAL SERVICE INFORMATION** (if needed):

| Category I (Served by the Court via Notice of Electronic Filing ("NEF")). | Category II (Served by Court via U.S. mail). |
|---|---|
| | |

Category III (To be served by the lodging party).

- 11